AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☑ Original          ☐ Dupl

CLERK'S OFFICE
A TRUE COPY
May 29, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Records and information associated with a certain cellular telephone<br>assigned call number 920-747-0556 (TARGET NUMBER), that is<br>stored at premises controlled by T-Mobile, a wireless telephone service<br>provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    26-MJ-100 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     06/12/2026     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable William E. Duffin     .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     05/29/2026 at 9:52 a.m.

*William E. Duffin*
*Judge's signature*

City and state:     Milwaukee, WI                    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

 

                                    _____
*Executing officer's signature*

                                    _____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(920)-747-0556** (TARGET NUMBER), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

11

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of March 29, 2026, through April 3, 2026:

a.   The following information about the customers or subscribers of the Account:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Subscriber personal identification, to include name, document control numbers, date of birth, photo, or any other type of identification documentation presented by the parties opening or in control of the accounts;

   iv.  All device information identifying the specific cellular phone, tablet etc. related to this phone number **920-747-0556** and account, to include IMSI, IMEI, MEID, and ESN

   v.   Local and long-distance telephone connection records;

   vi.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   vii. Length of service (including start date and closing date (if any)) and types of service utilized;

12

viii. Physical address where wireless telephone contract was initiated, or the contract was initiated;

ix. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

x. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

xi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses (data sessions); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for both call detail records and any data sessions.

c. Any and all specialized location data referred to by different phone companies as Per Call Measurement Data (PCMD), Real Time Tool data (RTT), Network Element Location Service data (NELOS) and/or Timing Advance or True Call data, to include estimated locations of the device based on cellular measurements on all networks to include 2G, 3G, 4G, and/or 5G networks.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations 18 U.S.C. § 844(i) (arson). During the period March 29, 2026, through April 3, 2026.

13



**CLERK'S OFFICE**
**A TRUE COPY**
**May 29, 2026**
**s/ MMK**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records and information associated with a certain cellular telephone<br>assigned call number 920-747-0556 (TARGET NUMBER), that is stored<br>at premises controlled by T-Mobile, a wireless telephone service provider<br>headquartered at 4 Sylvan Way, Parsippany, NJ 07054. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.     26-MJ-100 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 844(i) | Arson |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW MASON    Digitally signed by MATTHEW MASON
Date: 2026.05.27 16:24:47 -05'00'

*Applicant's signature*

Matthew Mason, Special Agent-ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means).*

Date:    05/29/2026 _____

*William E. Duffin*

*Judge's signature*

City and state:    Milwaukee, WI _____    Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Matthew Mason, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **920-747-0556** (**TARGET NUMBER**), that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), currently assigned to the Milwaukee Field Office. I have been so employed since September 2015. Prior to ATF, I was employed as a Police Office in the State of Illinois for just over 12 years.

3. Through my law enforcement career, I have attended two separate training academies. For ATF I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches, arrests, interviews, surveillance, and evidence collection. The training also included firearms trafficking, drug trafficking, firearms recognition, arson and explosives investigation. It covered an in depth break down of the requirements to possess, manufacture, deal, sell, and transfer

National Firearms Act ("NFA") weapons and requirements for selling, dealing, and manufacturing firearms.

4.      Over the course of my career, I have investigated federal firearms violations to include the trafficking, manufacturing and illegal possession of firearms. I have also investigated federal arson violations to include violations of 18 U.S.C. § 844(i) (arson). I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media. I also know from training and experience that cell phones store location data of the device.

5.      The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal and local law enforcement officers, and information obtained from review of evidence and analyses of reports.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based upon the facts set forth in this affidavit, I submit that there is probable cause to believe that the records and other information described in Attachment A and Attachment B will help provide evidence to law enforcement to which may assist or provide leads in the ongoing investigation for the events described below, and to determine the nature and scope of their activities which were committed in violation of 18 U.S.C. §  844(i) (arson).  Based on the information detailed below, there is probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

2

## PROBABLE CAUSE

7.     On March 30, 2026, police officers with the Milwaukee Police Department (MPD) responded to a 911 call for service at 10305 W. Villard Ave. #29, Milwaukee, WI, regarding a domestic violence and arson complaint.

8.     The above-mentioned location is a large three-story apartment complex. AV1 is a first-floor tenant.

9.     Upon arrival, Officers spoke to the victim, AV1, (F/B DOB: XX/XX/1999), and her minor sister/witness, JV1 (F/B DOB: XX/XX/2011). Both the victim and witness related that a male known to them, Braylon T. GLOVER (M/B DOB: XX/XX/1999), entered the residence, broke multiple items, and lit the apartment on fire.

10.     AV1 related to officers that she and GLOVER have a five-year-old child in common, but they do not live together and that they have not been in a relationship since approximately four years ago but that they are occasionally intimate.  AV1 further related she did not consent to GLOVER entering her apartment or damaging her property.

11.     AV1 reported that on the abovementioned date, GLOVER became upset with her because she had been out on a date with another man even though she and GLOVER are no longer in a relationship. When she arrived home from her date, GLOVER was there to drop off their child and became upset and began to pull her hair, snatching off her wig. GLOVER then approached her date's vehicle and threw a bottle of Hennesy at her date's vehicle, striking the vehicle. The date then drove away.

12.     AV1 later called the date back to her residence because she had forgotten items inside of the vehicle during the incident with GLOVER. Unbeknownst to AV1, GLOVER was still in the

3

area and again attempted to confront AV1 and her date at which time AV1 got inside of the date's vehicle and the date drove away.

13. GLOVER proceeded to chase the date's vehicle with his own vehicle driving recklessly at excessively high speeds. While this was occurring, AV1 was texting her sister, JV1, who was back at AV1's residence, letting JV1 know what GLOVER was doing. AV1's date was eventually able to lose GLOVER during the chase.

14. Soon after they lost GLOVER, AV1 began to receive text messages from JV1 telling her that GLOVER had returned to the residence. JV1 hid in AV1's bedroom and texted AV1 to call the police. JV1 proceeded to text JV1 that GLOVER was breaking things, lighting things on fire, and that the smoke alarms were going off. GLOVER then fled the scene, and a neighbor came over to help JV1 and to extinguish the fire.

15. MPD Officers and Detectives reported observing damage consistent with AV1 and JV1's accounts including: the glass door to the stove to be broken out, furniture tipped over and damaged, a vanity mirror ripped from the wall and glass broken, wall mounted television with broken screen, a chair outside the apartment to be recently burned, carpet that appeared recently burned (the size of the burn mark was approximately the same size as the seat of the chair located outside the apartment). The chair appeared to be part of a set from AV1's kitchen/dining set. The chair's seat had been consumed by fire leaving only the wooden frame.

16. Officers and Detectives noted that the child's bedroom appeared to be untouched.

17. JV1 reported to police that she recognized GLOVER's voice as he was damaging the house, but she hid and remained quiet. She stated that she feared GLOVER would find her and kill her and that she was scared of dying. She only came out of hiding when she heard the neighbor

4

yell to get out of the house because "its real smokey." She then observed the neighbor putting out a fire to one of AV1's chairs.

18. The Milwaukee Fire Department reported to MPD that the fire damage was limited to the carpet of AV1's apartment and there was no structural damage.

19. GLOVER was not located on scene. His vehicle was recovered and searched on April 1, 2026, where officers recovered an orange torch lighter and a red, 2-gallon gas can, with approximately 1-inch of suspected gasoline remaining inside of it based on the strong odor.

20. The vehicle also contained approximately 214 grams of marijuana packaged in various quantities as well as a digital scale.

21. A warrant was issued for GLOVER'S arrest, and he was arrested in Louisiana and extradited back to Wisconsin.

22. On May 7, 2026, MPD detectives interviewed GLOVER about the incident. GLOVER admitted that he went to AV1's residence on March 30th to drop off their son. He admitted that he got into an argument with AV1 and that he pulled her hair/wig.

23. He further admitted that he attempted to talk to AV1's date but the date drove away. He admitted that he threw a Hennesy bottle at the vehicle. He further admitted that he proceeded to chase the date's vehicle with his vehicle but then stopped when he remembered that he had left their non-verbal, autistic son at AV1's door.

24. GLOVER denied causing any damage to AV1's home and claimed that he bought everything for AV1 and his son.

25. During the interview, detectives recovered a cellular phone from GLOVER's prisoner property. GLOVER related the phone had associated number 920-747-0556 (target number) but declined to provide investigators with consent to review data in the phone.

5

26. A law enforcement database search of the TARGET NUMBER indicates the TARGET NUMBER is listed as a wireless phone service operated by T-Mobile and was utilized by GLOVER.

27. Based on my training and experience, I know that a person who is involved in criminal activity often possesses and uses electronic devices, including but not limited to wireless telephones, to aid in their criminal activities or while in the commission of them. I also know, based on my training and experience, that suspects frequently communicate with others prior to, during and/or after the commission of a crime, and frequently utilize cellular phones during the commission of a crime. The information obtained from this cellphone usage can be of significant assistance to the investigation and evidence in a subsequent criminal prosecution by showing the communication records/pattern(s) between any possible suspect and co-conspirators. Location information and call detail records generated by the use of cellphones can indicate the general geographic area that the mobile device was located at, as well as provide investigative leads of whether witnesses or suspects communicated with anyone prior to, during and/or after a criminal event, which can associate the cellular phone/device to a specific suspect or individual.

28. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **TARGET NUMBER**. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the

6

subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET NUMBER**'s user or users and may assist in the identification of co-conspirators and/or victims.

30.     Your Affiant is aware that many cellphones, tablets and computers capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the alleged illegal actions occurred. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often half a mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower

7

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

31. Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the **TARGET NUMBER**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

32. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

33. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.

8

This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET NUMBER**'s user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

34.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

35.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be restricted until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to restrict these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an

9

opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## <u>ATTACHMENT A</u>

## **Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(920)-747-0556** (TARGET NUMBER), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

11

**Particular Things to be Seized**

## I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of March 29, 2026, through April 3, 2026:

   a.   The following information about the customers or subscribers of the Account:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Subscriber personal identification, to include name, document control numbers, date of birth, photo, or any other type of identification documentation presented by the parties opening or in control of the accounts;

   iv.   All device information identifying the specific cellular phone, tablet etc. related to this phone number **920-747-0556** and account, to include IMSI, IMEI, MEID, and ESN

   v.   Local and long-distance telephone connection records;

   vi.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   vii.   Length of service (including start date and closing date (if any)) and types of service utilized;

viii.  Physical address where wireless telephone contract was initiated, or the contract was initiated;

ix.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

x.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

xi.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i.  the date and time of the communication, the method of the communication, and the source and destination of the communication such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses (data sessions); and

ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for both call detail records and any data sessions.

c.  Any and all specialized location data referred to by different phone companies as Per Call Measurement Data (PCMD), Real Time Tool data (RTT), Network Element Location Service data (NELOS) and/or Timing Advance or True Call data, to include estimated locations of the device based on cellular measurements on all networks to include 2G, 3G, 4G, and/or 5G networks.

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations 18 U.S.C. § 844(i) (arson). During the period March 29, 2026, through April 3, 2026.

13

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by T-Mobile, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile. The attached records consist of _____ (pages/CDs/megabytes)]. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile, and they were made by T-Mobile as a regular practice; and

b. such records were generated by T-Mobile electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by T-Mobile, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of

the Federal Rules of Evidence.

_____          _____

Date                                   Signature